UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BLUE CASTLE (CAYMAN) LTD.,

               Plaintiff,

     v.

AYOTUNDE GIWA A/K/A/ AYOTUNDE
M. GIWA, POINT SECURITIZATION
TRUST 2021-1 C/O WILMINGTON
SAVINGS FUND SOCIETY, FSB, NEW
YORK CITY PARKING VIOLATIONS
BUREAU,

             Defendants.

**MEMORANDUM & ORDER**
23-CV-03181 (NRM)

NINA R. MORRISON, United States District Judge:

Plaintiff Blue Castle (Cayman) Ltd. ("Blue Castle") brings this action against Defendants Ayotunde M. Giwa ("Giwa" or "Defendant"), Point Securitization Trust 2021-1, and the New York City Parking Violations Bureau, seeking to foreclose on a mortgage encumbering the property located at 207 Lexington Avenue, Brooklyn, New York 11216.

Blue Castle has moved for summary judgment against Giwa. For the reasons that follow, the motion for summary judgment is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the summary judgment record and are undisputed unless otherwise indicated.

On October 14, 2016, Giwa executed and delivered a consolidated note (the

1

"Note" or "Consolidated Note")) to Amalgamated Bank in the principal amount of $700,000.00.  Aff. of John Ramer dated May 19, 2025 ("Ramer Aff.") ¶ 6, ECF No. 59; Ramer Aff. Ex. A ("Consolidated Note"), ECF No. 59.  The Note was secured by a consolidated mortgage (the "Mortgage") executed the same day on the property located at 207 Lexington Avenue, Brooklyn, New York 11216 (the "Property").  Ramer Aff. ¶¶ 5, 7; Ramer Aff. Ex. B ("Consolidated Mortgage"), ECF No. 59.

The history of the consolidated Mortgage is as follows.  On March 31, 2004, Giwa executed a mortgage ("Mortgage A") to Washington Mutual Bank, FA, in the principal amount of $395,270.00, which was then assigned to JPMorgan Chase Bank, N.A. ("JPMorgan") on November 28, 2012.  Ramer Aff. ¶ 7A; Consolidated Mortgage at 20.[1]   On July 2, 2015, Giwa executed a mortgage to JPMorgan in the principal amount of $117,844.01, which was consolidated with Mortgage A to form a single lien in the amount of $483,000.00 ("Mortgage B").  Ramer Aff. ¶ 7B; Consolidated Mortgage at 19–20.  Mortgage B was assigned to MERS, as nominee for Quicken Loans Inc., on April 4, 2016.  Ramer Aff. ¶ 7B; Consolidated Mortgage at 19.

On March 24, 2016, Giwa executed a mortgage to MERS in the principal amount of $123,102.76, which was consolidated to form a single lien in the amount of $601,600.00 ("Mortgage C").  Ramer Aff. ¶ 7C; Consolidated Mortgage at 19.  Mortgage C was assigned to Amalgamated Bank on October 6, 2016. Ramer Aff. ¶ 7C.  Last, on October 14, 2016, Giwa executed a mortgage to Amalgamated Bank in the

---

[1] Unless otherwise indicated, all page references use the pagination provided by the Electronic Case Filing System.

2

principal amount of $101,890.76, which was consolidated with Mortgage C to form the Consolidated Mortgage in the amount of $700,000. Ramer Aff. ¶ 7D; Consolidated Mortgage at 13, 19. All of the aforementioned mortgages and assignments were duly recorded. Ramer Aff. ¶¶ 6–7; Consolidated Mortgage at 19–20.

On November 3, 2020, Giwa entered into a Loan Modification Agreement ("Modification Agreement") with Amalgamated Bank, in which Giwa affirmed his obligation under the Note to pay a modified unpaid principal balance in the amount of $676,452.97. Ramer Aff. ¶ 8; Ramer Aff. Ex. C ("Modification Agreement"), ECF No. 59. The Mortgage was then assigned to Blue Castle on February 14, 2023. Ramer Aff. ¶ 9; Ramer Aff. Ex. D ("Assignments of Mortgage"), ECF No. 59.

Blue Castle contends that Giwa then breached his obligation under the Modification Agreement by failing to make the required monthly payment starting July 1, 2022, and continued to fail to submit the required payments for all subsequent months. Ramer Aff. ¶ 11; Ramer Aff. Ex. E ("Borrower Statement of Account") at 63, ECF No. 59.

On January 18, 2023, Blue Castle sent Giwa a demand letter by first class and certified mail. Ramer Aff. ¶ 12; Ramer Aff. Ex. F ("Demand Letter"), ECF No. 59. On the same day, counsel for Blue Castle sent to Giwa, by first class and certified mail, a 90-day notice of intent to foreclose pursuant to New York Real Property Actions and Proceeding Law ("RPAPL") § 1304. Ramer Aff. ¶ 13; Ramer Aff. Ex. G ("Notice of Intent"), ECF No. 59.

Giwa generally claims that he did not default on his obligation, and that Blue

3

Castle did not follow the above procedures prior to foreclosure. Def. Rule 56.1 Statement ¶¶ 11–13, 15, 18–19; *see generally* Mem. in Opp'n to Mot. for Summ. J. ("Opp'n"), ECF No. 64.

## II.    Procedural History

On April 27, 2023, Blue Castle filed the instant action to foreclose on the Consolidated Mortgage due to Giwa's alleged default.[2] Compl., ECF No. 1. On February 18, 2025, Giwa filed an amended answer asserting twenty-three affirmative defenses and raising two counterclaims against Plaintiff. Amended Answer to Compl. ("Amended Answer"), ECF No. 46. On July 23, 2025, Plaintiff filed the instant motion for summary judgment. Notice of Mot. for Summ. J., ECF No. 56.

## DISCUSSION

## I.    Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56; *see O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir. 2002). "A fact is material when it might affect the outcome of the suit under governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citation modified). "In ruling on a motion for summary judgment, a court must

---

[2] The Complaint was also filed against Point Securitization Trust 2021-1 and the New York City Parking Violations Bureau, who were joined as necessary parties under RPAPL § 1311. *See* RPAPL § 1311 (requiring "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" to be joined as a defendant in a foreclosure action).

4

resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

However, "[t]he nonmoving party cannot survive summary judgment by casting mere 'metaphysical doubt' upon the evidence produced by the moving party." *Builders Bank v. Charm Developments II, LLC*, No. 09-CV-3935 (JG), 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Unless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving party." *McCarthy*, 482 F.3d at 202 (citation modified).

## II.    Merits

### A. Prima Facie Case

"Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001).

Blue Castle has submitted to the Court copies of both the Note and Mortgage. *See* Ramer Aff. ¶¶ 6, 7B; Consolidated Note; Consolidated Mortgage. Giwa does not contest the validity of these documents. Giwa argues, however, that Blue Castle has not sufficiently proven that he failed to make payments under the Note. Notably, Giwa's Answer included only two conclusory statements that Blue Castle had "failed to evidence a payment default." Amended Answer ¶ 18. In its Opposition, Giwa now

5

argues for the first time that Blue Castle's affidavit is insufficient because it was not accompanied by a contemporaneous business record, and because the Borrower Statement of Account filed with the Court lacked the necessary evidentiary foundation. *See* Opp'n at 6–9.

This argument is without merit. Blue Castle filed an affidavit of one of its authorized signatories, John Ramer, who has access to the relevant business records in this case and is "fully familiar with Blue Castle's record-keeping practices." Ramer Aff. ¶¶ 1–2. The affidavit attests that Giwa breached its obligation under the Note "by failing to pay the July 1, 2022 payment, and all subsequent payments." *Id.* ¶ 11. Annexed to this affidavit is the Borrower Statement of Account, which Ramer states was "maintained in the ordinary course of Plaintiff's business and based upon records boarded and verified by Plaintiff's loan servicer." *Id.* In turn, the Borrower Statement of Account dated May 19, 2025 shows that the most recent payment by Giwa was made towards the June 1, 2022 payment, with no payments made for any subsequent months. Borrower Statement of Account at 63.

That is sufficient for a prima facie case of default. Indeed, as courts in this circuit have found, "Ramer's affidavit is sufficient on its own to prove default." *Blue Castle (Cayman) Ltd. v. Miller*, 772 F. Supp. 3d 416, 425 (S.D.N.Y. 2025); *see Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (finding a prima facie case of default where plaintiff submitted an affidavit stating that "based on '[the affiant's] own knowledge and from reviewing Plaintiff's business records kept in the ordinary course of Plaintiff's business,' that defendant failed to cure the default").

6

Further, Blue Castle here has submitted not only Ramer's affidavit, but the underlying business record on which Ramer relied, the Borrower Statement of Account. Ramer's attestations that this statement was "maintained in the ordinary course of Plaintiff's business" is sufficient for it to be admissible evidence. Ramer Aff. ¶ 11; *see Wells Fargo Bank, Nat'l Ass'n as Tr. for Benefit of Holders of CD 2018-CD7, Mortg. Tr. Com. Mortg. Pass-Through Certificates, Series 2018-CD7 v. Prince 26, LLC*, No. 22-CV-5586 (PAE), 2023 WL 5152420, at *6 (S.D.N.Y. Aug. 10, 2023); *U.S. Bank Nat'l Ass'n v. Zakarin*, 175 N.Y.S.3d 284, 287 (N.Y. App. Div. 2022) (holding that default can be established by "documents that meet the requirements of the business records exception to the rule against hearsay"); Fed. R. Evid. 803(6) (describing the business-records exception to hearsay).

The Court thus finds that Blue Castle has established its prima facie case for foreclosure.

### B. Giwa's Affirmative Defenses

Once a prima facie case is established, "the Mortgagee has a presumptive right to foreclose which can only be overcome by an affirmative showing by the Mortgagor." *Regency Sav. Bank*, 139 F. Supp. 2d at 465–66. Though Giwa raised twenty-three affirmative defenses and two counter-claims in his Amended Answer, the vast majority of these claims were not raised in his brief in opposition to summary judgment and have thus been waived. *See Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004).

The Court thus considers only the six defenses to summary judgment asserted

in Giwa's opposition brief.  As explained below, summary judgment is denied as to Giwa's RPAPL § 1303 defense and granted as to the remaining five defenses.

1. Failure to Comply with Pleading Requirements of RPAPL § 1302

Giwa first argues that Blue Castle failed to comply with RPAPL § 1302, which requires that a complaint in a foreclosure action "contain an affirmative allegation that at the time the proceeding is commenced, the plaintiff . . . complied with all of the provisions of section five hundred ninety-five-a of the banking law *and any rules and regulations promulgated thereunder*."  RPAPL § 1302(1)(b) (emphasis added). Blue Castle's Complaint includes a paragraph addressing RPAPL § 1302, which states: "Pursuant to RPAPL Section 1302 as amended, the plaintiff has complied with all the provisions of Section 595a and Section 6-1 of the Banking Law and RPAPL Section 1304, except where it is exempt from doing so."  Compl. ¶ 17.  Giwa's contention is that the omission of a declaration of compliance with the "rules and regulations promulgated thereunder" is in violation of § 1302's mandate.

Indeed, since Blue Castle filed its complaint in 2023, a number of district courts in this circuit have found that the lack of the particular phrase "rules and regulations promulgated thereunder" in a complaint constituted a failure to comply with § 1302(1)(b).  *See, e.g.*, *Wilmington Savings Fund Society, FSB as trustee of Aspen Holdings Trust v. Fernandez*, 712 F. Supp. 3d 324, 333–34 (E.D.N.Y. 2024) (finding that plaintiff "mostly but not entirely complied with the requirements set forth in [§ 1302]" by "inexplicably omitting any mention of the 'rules and regulations promulgated thereunder' in its complaint); *Wilmington Sav. Fund Soc'y, FSB as Tr.*

8

*of Aspen Holdings Tr. v. Bernash*, No. 23-CV-485 (AMN), 2024 WL 1285431, at *5 (N.D.N.Y. Mar. 26, 2024) (same); *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2007-5, Asset-Backed Certificates, Series 2007-5 v. Shewtahal*, No. 24-CV-7892 (ERK), 2025 WL 2402824, at *4 (E.D.N.Y. Aug. 19, 2025) (same).

Notably, however, almost all the aforementioned cases analyzing a foreclosure plaintiff's compliance with § 1302 did so in the course of denying a motion for default judgment, not a motion for summary judgment. "Default judgments 'are generally disfavored and are reserved for rare occasions.'" *Bernash*, 2024 WL 1285431, at *3 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). Additionally, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

Furthermore, unlike in mortgage-foreclosure cases where a court declines to find a defendant in default for failure to respond to a complaint, Giwa here has been actively litigating his defenses to this action since its inception. This history includes Giwa filing an initial answer in May 2023, *see* Answer to Compl., ECF No. 8, undergoing court-referred mediation, *see* Order Referring Case to Mediation dated October 8, 2024, and eventually filing an amended answer in February 2025, *see* Amended Answer. During this time, Giwa has had numerous opportunities to allege (as he does here) not only that Blue Castle did not *plead* that it complied with the "rules and regulations promulgated []under" § 1302(1)(b), but to assert that Blue Castle did not actually follow one or more of those rules and regulations — which Giwa, notably, has not done. Even in its opposition brief on summary judgment, Giwa

9

does not allege that Blue Castle failed to comply with any of the relevant rules and regulations, arguing only that Blue Castle failed to include a specific affirmation of such compliance in the complaint. Moreover, Blue Castle has provided evidence affirmatively demonstrating its actual compliance with the "rules and regulations promulgated" under Banking Law § 595-a. *See* Demand Letter at 67–70; Ramer Aff. ¶ 12 (affirming compliance with mailing and notice content).

The Court does not find that Giwa has a viable defense to summary judgment under such circumstances, *i.e.,* where there is no suggestion in the record that Blue Castle did not actually comply with the requirements of § 1302, and where Blue Castle has affirmed that it did, in fact, comply with these requirements. *See Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 277 (E.D.N.Y. 2023) ("The Court declines to address whether the Court would be required to deny summary judgment because of a procedurally faulty notice of default where, as here, a plaintiff satisfied the *prima facie* burden for a foreclosure action and a defendant testified to receiving actual notice."). The Court further finds that it will not prejudice Giwa if the Court construes Blue Castle's recent affirmations of compliance, *see* Reply Mem. of Law in Further Supp. of Mot. for Summ. J. ("Reply") at 7–8, ECF No. 66, as a request for leave to amend its Complaint.[3] *Cf. Konteye v. New York City Dep't of Educ.*, No. 17-CV-2876 (GBD)(RWL), 2019 WL 4418647, at *18 (S.D.N.Y. Apr. 10, 2019) (declining

---

[3] To the extent that this issue remains a live dispute between the parties after this Order is issued, the Court *sua sponte* grants Blue Castle leave to amend its Complaint to add the phrase "and any rules and regulations promulgated thereunder" to paragraph 17.

to deny summary judgment based on plaintiff's failure to file notice of claim under N.Y. Educ. L. § 3813(1) because "the Court in its discretion may permit a late notice of claim in the absence of prejudice to the defendant"). Summary judgment is therefore granted as to Giwa's defense that Blue Castle failed to comply with the pleading requirements of § 1302(1)(b).[4]

2. Failure to Comply with Tenant-Notification Provisions of RPAPL § 1303

Giwa also argues that Blue Castle failed to comply with RPAPL § 1303, which states:

> The foreclosing party in a mortgage foreclosure action, involving residential real property shall provide notice to:
> a) any mortgagor if the action relates to an owner-occupied one-to-four family dwelling; and
> b) *any tenant of a dwelling unit in accordance with the provisions of this section.*

RPAPL § 1303(1) (emphasis added). Notice to the mortgagor must be "delivered with the summons and complaint," *id.* § 1303(2), and any notice to tenants must be "delivered within ten days of the service of the summons and complaint," *id.* § 1303(4). "Proper service of an RPAPL [§] 1303 notice is a condition precedent to the commencement of a foreclosure action, and noncompliance mandates dismissal of the complaint." *Wilmington PT Corp. v. Gray*, No. 19-CV-1675 (AMD), 2025 WL 857979,

---

[4] The Court is aware that in at least one case, a court in this circuit denied summary judgment in part due to the plaintiff's failure to include the "rules and regulations promulgated thereunder" language in its complaint. *See Brown v. Amarante*, No. 23-CV-3514 (JGLC) (RWL), 2024 WL 4716364, at *10 (S.D.N.Y. Nov. 8, 2024), *report and recommendation adopted*, No. 23-CV-3514 (JGLC), 2025 WL 934318 (S.D.N.Y. Mar. 27, 2025). However, this case is not binding precedent, and for the reasons just discussed, the Court respectfully departs from the ruling in that case.

at *6 (E.D.N.Y. Mar. 19, 2025) (quoting *HSBC Mortg. Corp. USA v. Tehrani*, 216 N.Y.S.3d 627, 633 (N.Y. App. Div. 2024)).

Giwa claims that although Blue Castle may have provided notice to Giwa, the mortgagor, Blue Castle failed to provide notice to two tenants who were also living on the property. In support, Giwa submitted with his Opposition an affirmation in which he stated that he had two tenants residing in one of the units of the Property in question. Aff. of Ayotunde Giwa ("Giwa Aff.") ¶ 3, ECF No. 63. Giwa also annexed to this affirmation a two-year lease agreement starting November 1, 2021, which lists two tenants: "Astrid Caupin" and "Alvaro Achon." Giwa Aff. Ex. A. The agreement is signed by Giwa and Caupin. Giwa also submitted a "Rental Agreement" with the same tenants covering the period between January 1, 2024 and December 31, 2024. Giwa Aff. Ex. B.

Blue Castle does not dispute that notice was not provided to Caupin or Achon. Indeed, it appears to the Court that Blue Castle was not aware of the existence of the two tenants until Giwa's filings in response to the instant motion. Blue Castle instead argues that (1) Giwa waived this claim by insufficiently developing it in his Answer; (2) Giwa's evidence does not adequately show that Caupin and Achon resided at the Property during the relevant period; and (3) Giwa has not established that "[Blue Castle] had actual knowledge of any such tenancy at the time of service." Reply at 9.

The second and third objections are plainly without merit. Blue Castle takes issue with the fact that the submitted lease agreement is "signed only by one of the

12

two purported tenants, is not notarized, and is unaccompanied by any documentation showing that the tenants actually resided at the Property in May 2023." Reply at 9. However, the lease agreement lists both Caupin and Achon as tenants, and Blue Castle points to no authority requiring that a lease agreement be signed by all tenants listed as residing within a unit for these notice provisions to apply to them. Additionally, Caupin and Achon's tenancy and residence during the relevant period are supported by Giwa's sworn affirmation. *See* Giwa Aff. ¶ 3. Ultimately, at most, Blue Castle's contentions create a factual dispute which the Court must resolve in favor of the nonmoving party. *See McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). The evidence presented here is certainly enough to at least raise a genuine dispute of material fact as to whether these tenants resided in the unit during the relevant period. *See McCarthy*, 482 F.3d at 202 ("An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (citation modified)).

As to the claim that Blue Castle had no knowledge of the tenancies, the Court need not resolve that dispute because it is immaterial to the question of compliance under § 1303. Blue Castle asserts that "§ 1303(4) requires delivery of tenant notices 'if the identity of the tenant is known to the plaintiff.'" Reply at 9. That misrepresents the provision. § 1303(4) states:

> The notice to any tenant required by paragraph (b) of subdivision one of this section shall be delivered within ten days of the service of the summons and complaint. . . . For buildings with fewer than five dwelling units, the notice shall be delivered to the tenant, by certified mail, return receipt requested, and by first-class mail to the tenant's address at the property if the identity of the tenant is known to the

13

> plaintiff, *and by first-class mail delivered to "occupant" if the identity of the tenant is not known to the plaintiff.*

RPAPL § 1303(4) (emphasis added).  In other words, whether Blue Castle was aware of the tenants' identities bears only on the question of *how*, not *whether,* notice needs to be delivered.  And Blue Castle does not otherwise suggest that it provided notice to the tenants in any fashion.

Blue Castle's remaining response is that Giwa waived this claim by failing to develop it properly in his Answer.  Ordinarily, "[a] party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment."  *Heletsi v. Lufthansa German Airlines, Inc.*, No. 99-CV-4793 (SJ), 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001); *see also Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) (declining to consider facts raised for the first time in opposition to summary judgment).  Here, while Giwa included compliance with § 1303 as an affirmative defense in his Answer, he did not include any allegations as to how or why Blue Castle failed to comply with § 1303, simply stating the requirements under the provision and claiming that "Plaintiff fail[ed] to provide substantive evidence of compliance to RPAPL § 1303."  Amended Answer ¶ 3.  He did not mention the two tenants or provide any of the supporting documentation until his opposition to the instant motion.

However, because compliance with the notice requirements of § 1303 is a condition precedent to a foreclosure action, New York courts have held that "[a] plaintiff's failure to comply with the notice requirements of RPAPL [§] 1303 may be

raised at any time during an action." *Green Mountain Holdings (Cayman) Ltd. v. 501 Lafayette Ave LLC*, 2023 WL 6594003, at \*5 (E.D.N.Y. Aug. 18, 2023) (internal quotation marks omitted) (quoting *Wells Fargo Bank, N.A. v. Coffey*, 113 N.Y.S.3d 164, 165 (N.Y. App. Div. 2019)); *see First Nat. Bank of Chicago v. Silver*, 899 N.Y.S.2d 256, 257, 261 (N.Y. App. Div. 2010) (holding as a matter of first impression that the failure to provide notice under RPAPL § 1303 does not need to be raised as an affirmative defense in the answer and "can be raised at any time during an action").

Furthermore, the fact that Giwa did include an affirmative defense asserting Blue Castle's non-compliance with § 1303 — even if a boilerplate one — lessens any concern that the Court's consideration of these new allegations regarding the tenants and their lack of notice will be unfairly prejudicial to Blue Castle. That is particularly so given that here, Giwa is alleging not merely a procedural defect with Blue Castle's § 1303 notice, but a complete failure to serve required notices on two tenants residing at the Property. The Court thus finds sufficient grounds to deny summary judgment on the affirmative defense that Blue Castle failed to comply with § 1303.

As noted above, most of the other defenses in Giwa's Answer were not addressed in the Opposition and are thus considered abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (finding that a "court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"). The Court briefly addresses the four remaining claims raised in Giwa's Opposition, none of which are persuasive. Summary judgment is granted as to each of these claims.

3.  Failure to Comply with 90-Day Notice Provisions of RPAPL § 1304

First, Giwa argues that Blue Castle failed to comply with RPAPL § 1304, which requires notice to be provided to a borrower at least ninety days before commencing a foreclosure action.  RPAPL § 1304(1); *see CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021).  Giwa claims that Blue Castle (1) did not submit admissible evidence to establish proper mailing of the notice; and in any case, (2) sent the notice by a third party lacking the authority to do so.

Neither argument has merit.  Blue Castle submitted the affidavit of Nina Clancy, a paralegal from MWN, Blue Castle's counsel, who attested to the proper mailing and service of the notice under § 1304 based on her "personal review of the Business Records . . . and [her] familiarity with the [] described mailing procedures." Aff. of Nina Clancy ("Clancy Aff."), Decl. of Alan H. Weinreb ("Weinreb Decl.") Ex. C at 122, ECF No. 58.  Giwa asserts that Blue Castle has not established "who Clancy is, her affiliation with [Blue Castle's counsel] or [Blue Castle], or whether her affidavit is based on reliable business records," but that is plainly contradicted by the record.  Opp'n at 15.  Clancy's affidavit clarifies her position at MWN, attests to her familiarity with the MWN's procedures and records, and describes in detail the company's regular and ordinary course of business for mailing RPAPL § 1304 notices as well as maintaining the records and documents related to foreclosure actions.  *See* Clancy Aff. at 122–26.  The Second Circuit has made clear that "[c]ompliance with § 1304 can be established with . . . proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by

16

someone with personal knowledge of the procedure." *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020). That is precisely what Blue Castle provided here.

Giwa's second contention is that MWN did not have the authority to mail the notice under § 1304 because the statute provides that "[t]he notices required by this section shall be sent by such lender, assignee (including a purchasing investor) or mortgage loan servicer." RPAPL § 1304(2). However, "New York courts have found that the notice requirement of RPAPL § 1304 is satisfied where a lender's counsel serves notice." *Avil 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 277 (E.D.N.Y. 2023); *see also Ocwen Loan Servicing LLC v. Siame*, 185 A.D.3d 408, 409 (N.Y. App. Div. 2020) ("RPAPL 1304 does not preclude an attorney acting on behalf of a lender from sending RPAPL 1304 notices.").

### 4. Failure to Provide Notice of Default

Giwa next argues that Blue Castle failed to comply with a provision of the mortgage agreement requiring that the lender provide notice of the borrower's right to cure within "at least 30 days from the date on which the notice is given." Here, Blue Castle's notice of default was transmitted on January 18, 2023, and gave Giwa until February 17, 2023 to cure — in other words, exactly 30 days. Giwa's sole claim is that "February 17 is only the 30th day, not a date that is 'at least 30 days' from the notice date." Opp'n at 17.

This is contrary to the common-sense way of calculating due dates. For example, by Giwa's logic, giving a person "one day" to respond to a notice given on January 18 would mean to give that person until January 20. Giwa only points to

17

one authority arguably in support of his claim, but that case is inapposite.  In *HSBC Bank USA, N.A. v. Schulman*, 228 N.Y.S.3d 664, 666 (N.Y. App. Div. 2025), the court found insufficient a notice that stated that the amount to cure "must be received 'within' 30 days from the date of the letter."  But that was because the notice's statement that the amount owed must be received *within* 30 days was an inaccurate representation of the agreement, which provided that the party be given *at least* 30 days.  Here, Blue Castle gave Giwa "at least" 30 days to cure by giving him exactly 30 days from the date of the notice.

5.  <u>Failure to Comply with RPAPL § 1306</u>

Giwa next argues that Blue Castle failed to comply with RPAPL § 1306, which requires the lender to file a specific pre-foreclosure notice with the Superintendent of Financial Services within three business days of mailing the § 1304 notice to the borrower.  Giwa claims that (1) Blue Castle's § 1306 notice was filed by an unauthorized party; and (2) the notice was substantively defective.

Again, neither claim is persuasive.  Blue Castle submitted its Proof of Filing Statement, which indicates filing of the § 1306 notice by its loan servicer, FCI Lender Services, Inc.  Weinreb Decl. Ex. B at 145.  Giwa asserts that FCI "is neither the lender, the assignee, nor the mortgage loan servicer of record."  Opp'n at 18.  But he offers no evidence to dispute that FCI is Blue Castle's loan servicer.  Indeed, in another case, Judge Oetken addressed this very point regarding Blue Castle's relationship with FCI, noting that "[a]s for [Giwa's] objections that Blue Castle's loan servicer, FCI, filed the Section 1306 document instead of Blue Castle, the statute

18

itself permits the 'lender, assignee or mortgage loan service' to file the required documentation.  And though [Giwa] argues that 'there is no evidence of [FCI's] relationship to the [Blue Castle] or any of its purported predecessors in interest,' he has presented no evidence suggesting that FCI is not Blue Castle's loan servicer." *Blue Castle*, 772 F. Supp. 3d at 427–28.

Giwa next claims that Blue Castle's § 1306 notice was substantively defective, pointing to a number of seeming inaccuracies on the Proof of Filing Statement submitted by Blue Castle.  But as Blue Castle notes, "Defendant's argument is premised on the mistaken assumption that the document shown on the proof of filing *is* the filing."  Reply at 16.  In reality, the Proof of Filing Statement shows only a shorthand version of what was actually filled out on the submitted form.  For example, Giwa takes issue with the fact that the Proof of Filing Statement indicates "Other" in the field for "Days Delinquent" instead of specifying the number of days delinquent.  But Blue Castle explains that the entry for "Over 120 days" from the dropdown list in the § 1306 filing itself gets translated as an "Other" option in the portal for the Proof of Filing Statement, and includes images of the dropdown list as proof.  Reply at 15.  Giwa's other objections are similarly without merit.  In any case, Giwa offers no authority suggesting that the Proof of Filing Statement must reflect the exact information contained in the actual underlying § 1306 notice.

6.  Failure to File Notice of Pendency Under RPAPL § 1331

Finally, Giwa argues that Blue Castle failed to comply with RPAPL § 1331, which requires a plaintiff in a foreclosure action to file a "notice of pendency of the

19

action, which shall specify[] . . . the date of the mortgage, the parties thereto and the time and place of recording." RPAPL § 1331. Giwa claims that because Blue Castle did not submit the actual notice itself with the Court, there is insufficient proof that Blue Castle complied with this provision.

However, Blue Castle has now filed both a copy of the notice of pendency, Reply Decl. Ex. G, ECF No. 67, as well as the County Clerk's filing summary, Reply Decl. Ex. H, ECF No. 67, which indicate that the notice under § 1331 was indeed filed as required. Notably, Giwa never asserted any failure by Blue Castle to comply with § 1331 in his Answer, so this argument is in any case waived. *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021); *see also Windward Bora, LLC v. Sotomayor*, No. 21-CV-7161 (CS) 2023 WL 2575582, at *4 (S.D.N.Y. Mar. 20, 2023), *aff'd*, 113 F.4th 236 (2d Cir. 2014) (finding defendant's § 1331 claim barred where it was raised in opposition to the motion for summary judgment but not included in the answer). Moreover, given that Giwa did not previously raise this defense, it is reasonable that Blue Castle has only now submitted a copy of the notice of pendency in response to the opposition to summary judgment, as § 1331 does not require that the notice itself be filed on the docket.

## CONCLUSION

For the foregoing reasons, Blue Castle's motion for summary judgment is denied as to Giwa's § 1303 defense, and granted as to all other claims.

SO ORDERED.

20

/s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge

Dated:      March 2, 2026
            Brooklyn, New York